NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PERSONALIZED MEDIA COMMUNICATIONS, L.L.C.,**
*Plaintiff-Appellee*

v.

**ROVI GUIDES, INC., TVG-PMC, INC.,**
*Defendants-Appellants*

**ECHOSTAR CORPORATION, DISH NETWORK CORPORATION, FKA ECHOSTAR COMMUNICATIONS CORPORATION,**
*Defendants*

---

2014-1825

---

Appeal from the United States District Court for the Eastern District of Texas in No. 2:08-cv-00070-RSP, Magistrate Judge Roy S. Payne.

---

Decided: December 22, 2015

---

DANIEL J. SHIH, Susman Godfrey LLP, Seattle, WA, argued for plaintiff-appellee. Also represented by STEPHEN D. SUSMAN, CHANLER ASHTON LANGHAM, Hou-

ston, TX; ARUN SUBRAMANIAN, New York, NY; STEPHEN SCHREINER, Goodwin Procter LLP, Washington, DC.

JOEL LANCE THOLLANDER, McKool Smith, P.C., Austin, TX, argued for defendants-appellants. Also represented by RODERICK GEORGE DORMAN, MARC MORRIS, McKool Smith Hennigan, P.C., Los Angeles, CA; DANIEL LUKE GEYSER, Stris & Maher LLP, Los Angeles, CA.

_____

Before REYNA, MAYER, and CHEN, *Circuit Judges.*

REYNA, *Circuit Judge.*

Plaintiff-Appellee Personalized Media Communications ("PMC") is the assignee of U.S. Patent Nos. 4,965,825; 5,109,414; 5,233,654; 5,335,277; and 5,887,243 (collectively, the "Harvey Patents"), which relate to distributing and controlling media content. Defendant-Appellants EchoStar Corporation ("EchoStar") and Rovi Guides, Inc. ("Rovi") make and sell interactive television programming guides for finding, watching, and recording television shows, and for performing related functionality. Rovi holds a limited license to use the Harvey Patents in the "Interactive Program Guide" ("IPG") field, and EchoStar is its sub-licensee.

In 2008, PMC sued EchoStar for infringement of the Harvey Patents. EchoStar asserted a license defense, and Rovi intervened as EchoStar's licensor. PMC moved for summary judgment on EchoStar's license defense, arguing that the accused technology falls outside the scope of Rovi's license. J.A. 2801-22. The district court granted PMC's motion because it found that "the contract at issue is unambiguous and does not cover the accused instrumentalities in this case." J.A. 11. The district court concluded that because the license's scope is unambiguous, consideration of extrinsic evidence was unnecessary. J.A. 9-10.

The issue on appeal is whether the district court erred in its determination that Rovi's license is unambiguous, such that extrinsic evidence was rightfully excluded. We hold that the license is ambiguous, and accordingly, we *vacate* the district court's grant of summary judgment and *remand* for further consideration in light of the extrinsic evidence.

## I. BACKGROUND

In 2000, PMC and Rovi entered into a license agreement (the "IPG License" or "License") giving Rovi exclusive rights to use the Harvey Patents in the IPG field. J.A. 2363. The parties defined the IPG field in Section 1.3 of the agreement, which reads, in relevant part:

> **[Sentence One]** The "Interactive Program Guide" field means applications and services (collectively "IPG Applications"), the primary purpose of which is to provide descriptive information (including without limitation program listings) relating to television or radio programming available to Consumers, and which may, or through actions by a Consumer may, control Consumer equipment that enables viewing, listening, recording or storing of such television or radio programming, but where such IPG applications are not primarily intended to provide descriptive information relating solely to advertising or promotional programming available to Consumers.

> **[Sentence Two]** Such IPG Applications shall include, without limitation, tuning, flip, browse, parental control, recording, reminders, favorites, searching or sorting listings by any category or criteria, video on demand, near video on demand, pay per view, picture in guide functionality, help, user profile setup, generation or use, TV mail, TV chat, and TV newsgroups.

**[Sentence Three]** The Interactive Program Guide field shall also include the ability to access from such IPG Applications any other interactive or passive application, service or feature; provided, however, that the creation, distribution, transmission and use by a Consumer of such other interactive or passive applications, features, or services or the television or radio programming accessible through such IPG Applications shall not be deemed to be included in the Interactive Program Guide field.

J.A. 2360.

In 2008, PMC sued EchoStar, a Rovi sub-licensee, in the Eastern District of Texas for infringement of the Harvey patents. PMC accused EchoStar's uplink centers and set top box equipment of infringing by implementing various functionality, including video-on-demand, pay-per-view, interactive or premium-content television applications, transmission, encryption/decryption, video recording, and program processing. Rovi intervened to argue that EchoStar's activity fell within the scope of the IPG License.

PMC sought declaratory judgment that PMC's infringement claims are outside the IPG field, as defined in the License. EchoStar argued that the accused technologies are within the IPG field because they are listed in Sentence Two as example IPG Applications. J.A. 3297-98. PMC countered that the Applications listed in Sentence Two are only licensed when their "primary purpose . . . is to provide descriptive information," as required by Sentence One, and that the accused technologies did not have that primary purpose. J.A. 2810-11. Rovi argued that Sentence Two lists not example IPG *Applications*, but "features and functions of or driven by IPG Applications," and that such features and functions are licensed regard-

less of whether they meet the primary purpose requirement.  J.A. 4975.

The district court adopted PMC's position.  It reasoned that the language "[s]uch IPG Applications" in Sentence Two "suggests a definitive link between the first and second sentences—namely that the list set forth in the second sentence is a subset of examples of the 'IPG Applications' generally referred to in the first sentence, which are covered if the primary purpose of the application is to provide descriptive information."  J.A. 6.  The court concluded that, "[h]aving found no ambiguity in the contract, the Court need not review extrinsic evidence."  J.A. 9.

On appeal, Rovi again argues that the examples in Sentence Two are not "*IPG Applications,*" but merely *functions* that are licensed when performed *in connection with* a licensed IPG Application (i.e., a guide whose primary purpose is to provide descriptive information).  It argues that Sentence Two cannot list example IPG Applications that are licensed only if they meet the primary purpose requirement because some of the listed items, such as tuning, cannot have a primary purpose of providing descriptive information.

PMC now abandons its position below and agrees with Rovi that Sentence Two lists functions rather than example IPG Applications.  But it disagrees with Rovi that those functions are covered whenever performed in connection with a guide.  Instead, PMC argues that the License covers only *invocation* of those listed functions by a licensed guide, but not the *performance* of those functions or the components that actuate that performance.  In support, it highlights Sentence Three, which states that the licensed guides may access applications, services, or features that are not themselves licensed.  Accordingly, PMC concludes that although the "*ability to access* external features may be covered, those features themselves

are not." PMC Opening Br. 32. PMC contends that to read the License otherwise would transform a limited field-of-use license covering only program guides into a broad license covering virtually every aspect of a modern television system.

In light of the disparate interpretations advanced by the parties and by the district court, Rovi argues that the License is ambiguous, and that we should therefore vacate the district court's judgment and remand for consideration of the extrinsic evidence. We agree.

## II. STANDARD OF REVIEW

Because summary judgment is not an issue unique to patent law, we apply the law of the regional circuit where the appeal would otherwise lay, which is here the Fifth Circuit. *Depuy Spine, Inc. v. Medtronic Sofamor Danek*, *Inc.*, 469 F.3d 1005, 1013 (Fed. Cir. 2006). The Fifth Circuit "reviews a motion for judgment as a matter of law de novo, applying the same legal standard as did the trial court." *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The parties agree that Delaware law governs the interpretation of the IPG License. Under Delaware law, the interpretation of a contract—including a determination of whether an ambiguity exists—is reviewed de novo. *Paul v. Deloitte & Touche LLP*, 974 A.2d 140, 145 (Del. 2009). Delaware follows an objective theory of contracts, under which the contract is construed as it would be understood by "an objective, reasonable third party." *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). A contract is ambiguous if it is subject to two different reasonable interpretations, *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992), and extrinsic evidence is not admissible on the question of

whether an ambiguity exists, *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 288-89 (Del. 2001). The fact that the parties disagree on the correct interpretation of the contract does not automatically make the contract ambiguous. *Rhone-Poulenc* 616 A.2d at 1196.

### III. DISCUSSION

The only issue on appeal is whether the IPG License is facially ambiguous on the disputed issue, such that consideration of extrinsic evidence is appropriate. We conclude that the IPG License contains at least two ambiguities, which the lower court must resolve in light of the extrinsic evidence. *First*, the License is ambiguous regarding whether Sentence Two lists *features* of an IPG Application, as both parties propose on appeal, or "a subset of examples of the 'IPG Applications' generally referred to in the second sentence," as the parties argued below and the district court found. J.A. 6. *Second*, if Sentence two lists functions rather than example Applications, it is unclear whether the License permits a licensed guide merely to *access* those functions, as PMC proposes, or whether the License also covers actual performance of the accessed functions, as Rovi proposes.

### A

The core dispute below was whether the items listed in Sentence Two are example IPG Applications subject to the primary purpose requirement of Sentence One. Both parties agreed that Sentence Two lists example IPG Applications, but they disagreed on whether each such Application must also meet the primary purpose requirement. The district court's rationale for concluding that the listed items are subject to the primary purpose requirement was its understanding that "the list set forth in the second sentence is a subset of examples of the 'IPG Applications' generally referred to in the first sentence, which are covered if the primary purpose of the application is to provide descriptive information." J.A. 6.

Although the district court was correct that the recitation of "IPG Applications" in Sentence Two clearly refers back to the "IPG Applications" defined in Sentence One, it was incorrect that Sentence Two therefore necessarily lists examples of these Applications rather than their features. Nothing in the structure of the sentence "[s]uch IPG Applications shall include . . . ," requires that what follows are example Applications rather than features of such Applications. For example, while the sentence "such sports shall include baseball and football" lists examples of sports, the sentence "such sports shall include running and jumping" lists features of sports. The sentence structure therefore does not settle the ambiguity.

Moreover, compelling reasons exist to believe the district court's interpretation is not the correct one. Tellingly, both parties now disagree with the district court's interpretation that Sentence Two lists example IPG Applications rather than features. Even PMC, who triumphed on the back of the district court's interpretation, now characterizes that same interpretation as "absurd." PMC Opening Br. 22, n7. Another problem with interpreting Sentence Two as enumerating example Applications is that some of the examples are verbs, which indicate features rather than independent applications. Yet another issue, as Rovi notes, is that some of the examples in Sentence Two can never have the primary purpose of providing descriptive information. For example, the primary purpose of "tuning" is to tune, not to provide descriptive information. It therefore makes little sense for the License to grant rights to tuning applications, but only so long as the primary purpose of those tuning applications is to provide descriptive information. A basic tenet of contract interpretation is that "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *Shell Oil Co. v. United States*, 751 F.3d 1282, 1293 (Fed. Cir. 2014). To

read Sentence Two as granting rights to logically impossible applications would not make sense.

We need not decide here on the correct construction; we need only conclude that the language of the License is ambiguous. As both parties have highlighted, the district court based its judgment on a construction that not only fails to be unambiguously correct, but is likely incorrect. This reason is alone sufficient to vacate the court's order and remand for consideration of the extrinsic evidence.

## B

If Sentence Two lists functions, as both parties now argue on appeal, the IPG License is still ambiguous on whether permission to "include" those functions permits *performing* those functions whenever "connected to the use of" a licensed guide (as Rovi argues) or only *invoking* those functions by the licensed guide (as PMC argues). PMC believes that Sentence Two only permits the guide to invoke the listed functions, but that the performance of those functions—and the components that actuate that performance—are not themselves licensed. In contrast, Rovi believes that Sentence Two not only permits a licensed guide to invoke other components to perform the enumerated functions, but also permits the actual performance of those functions. This distinction was not raised before the district court.

The text of the License does not speak unambiguously to the rather nuanced dispute between the parties. Sentence Two states that licensed IPG Applications shall "include" the listed functions. It is reasonable to understand "include" as permitting the guide to *perform* the listed functions, and nothing in the term "include" dictates unambiguously that the guide must perform the function *itself* without invoking any external components. Sentence Two is at least ambiguous on this issue.

To support its interpretation that the guide may only *invoke* unlicensed external components, PMC looks to context in Sentence Three. Sentence Three permits the guide to "access . . . other interactive or passive applications," but specifically excludes the "creation, distribution, transmission and use by a Consumer of such other interactive or passive applications . . . ." But Sentence Three is not dispositive because it may refer only to standalone applications used *apart* from a licensed guide. In addition, the recited "*other* interactive or passive applications" may reasonably be read as referring to features other than those listed in Sentence Two. Sentence Three therefore creates only further ambiguity.

Based on the text of the License, a reasonable third party could arrive at two reasonable interpretations on the disputed issue of invocation and performance. The License is therefore ambiguous on this second point, and consideration of extrinsic evidence is therefore appropriate on this second independent ground. Again, we do not decide which party's interpretation is correct, only that the License is ambiguous and that consideration of extrinsic evidence is appropriate. We leave such consideration to the court of first instance.

## IV. CONCLUSION

Because the License includes at least two ambiguities, we *vacate* the district court's summary judgment and *remand* for reconsideration of the disputed scope in view of the extrinsic evidence.

**VACATED AND REMANDED**

### COSTS

No costs.