Randy and Eileen O'BRIEN Individual-
ly and as Representatives of all per-
sons similarly situated Plaintiffs Be-
low, Appellants,

v.

PROGRESSIVE NORTHERN INSUR-
ANCE COMPANY, Defendant Be-
low, Appellee.

Steven D. Connelly, Individually and as
representative of all persons similarly
situated, Plaintiffs Below, Appellants,

v.

Keystone Insurance Company,
Defendant Below,
Appellee.

John E. Hocutt, Jr., Individually and
on behalf of all others similarly sit-
uated, Plaintiff Below, Appellant,

v.

State Farm Mutual Automobile
Insurance Company, Defendant
Below, Appellee.

Nos. 58,2001, 22,2001, 134,2001.

Supreme Court of Delaware.

Submitted: Sept. 26, 2001.
Decided: Nov. 9, 2001.
Reargument Denied Dec. 4, 2001.

Robert Jacobs and J.X. Hedrick, II of Jacobs & Crumplar, Wilmington; Richard L. Akel of Weitz & Luxenberg, New York City; Debra Brewer Hayes (argued) of Reich & Binstock, Houston, Texas, of counsel, for Randy and Eileen O'Brien and Steven D. Connelly. .

James W. Semple (argued) of Morris, James, Hitchens & Williams, Wilmington, for Progressive Northern Insurance Company.

Michael L. Vild and Christopher A. Ward of the Bayard Firm, Wilmington; Jeffrey A. Less (argued) and Paul B. Bech of Bazelon Less & Feldman, Philadelphia, Pennsylvania, of counsel, for Keystone Insurance Company.

William R. Peltz of Kimmel, Carter, Roman & Peltz, Wilmington; Lawrence E. Feldman, Mark C. Rifkin (argued), and Roseann E. Weisblatt of Feldman & Rifkin, Jenkintown, Pennsylvania; Jonathan Shub of Sheller, Ludwig & Badey, Philadelphia, Pennsylvania, of counsel, for John E. Hocutt, Jr.

Allen M. Terrell, Jr., (argued) Frederick L. Cottrell, III, and Chad M. Shandler of Richards, Layton & Finger, Wilmington, for State Farm Mutual Insurance Company.

Before WALSH, HOLLAND and STEELE, Justices.

STEELE, Justice.

Steven D. Connelly, Plaintiff-below, appeals the December 18, 2000 joint order of the Superior Court granting Defendant-below Keystone Insurance Company's Motion to Dismiss. Plaintiffs-below Randy and Eileen O'Brien appeal the Superior Court's February 5, 2001 order granting Defendant-below Progressive Northern Insurance Company's Motion to Dismiss the O'Briens' suit. John E. Hocutt, also Plaintiff-below, appeals the March 9, 2001 order of the Superior Court granting Defendant-below State Farm Mutual Automobile Insurance Company's Motion to Dismiss.[1] Because of the nearly identical nature of the issues in these cases, we have consolidated them for the purpose of this appeal.[2]

The question before this Court is whether or not the limits on liability found in the automobile insurance policies issued by the Appellee insurance companies to the Appellants preclude recovery for what is commonly known as the "diminished value" of a vehicle that has been repaired after an accident. Appellants argue that the trial judge erred in determining that the "repair or replace" provisions of the disputed policies cap the insurer's liability at the cost of returning the vehicle to substantially the same physical, operational, and mechanical condition as before the accident. They contend that, as a matter of law, 1) the policies specifically provide for the coverage of diminished value; and, 2) in the alternative, the language is ambiguous and should thus be interpreted broadly in favor of the insureds. We find that the language of the policy does not expressly covers loss from "diminished value," and that the "repair or replace" language crafted to limit the insurers' liability is clear and, therefore, not susceptible to more than one reasonable interpretation. Therefore, we AFFIRM the decisions of the Superior Court.

1. The plaintiffs in all three cases purport to represent not only themselves, but also all others similarly situated. Because the Superior Court dismissed the actions as a matter of law, it made no decision on the certification of the proposed class.

2. The Superior Court articulated its findings only in its Order granting Defendant Keystone's Motion to Dismiss and denying the O'Briens' Motion for Partial Summary Judgment. *See O'Brien v. Progressive Northern Ins. Co.*, Del.Super., 2000 WL 33113833 (2000) (Order). However, the trial judge cited this decision as the basis for his dismissal of the O'Brien and Hocutt claims. The record supports our assumption that the Superior Court's findings in its Keystone decision are equally applicable to the other two policies.

## I.

The facts of these cases are as follows:

*O'Brien:* In December 1997, someone stole a 1995 Honda Accord owned by Randy and Eileen O'Brien from a Wilmington parking lot. The car was discovered later that month with substantial damage to the front-end, passenger side, and the interior. The O'Briens filed a claim with Progressive under the comprehensive coverage provision of their policy. The comprehensive section of the policy provided, in part, that if the policy-holder paid a premium for comprehensive coverage, Progressive would pay for loss to a covered vehicle, "subject to the Limit of Liability." The Limit of Liability section of the policy provided as follows:

1. The Limit of Liability for **loss** to a **covered vehicle** or **non-owned vehicle** will be the lowest of:
 a. the actual cash value of the stolen or damaged property at the time of loss, reduced by the applicable deductible shown on the **Declarations Page**, and by its salvage value if **you** retain the salvage;
 b. the amount necessary to repair or replace the stolen or damaged property with other property of like kind and quality, reduced by the applicable Deductible as shown on the **Declarations Page**; or
 c. any applicable Limit of Liability or Stated Amount Vehicle Coverage shown on the **Declarations Page**, reduced by the salvage value if **you** retain the salvage. (Emphasis in original).

Progressive chose to repair the O'Briens' Honda, as was its option. The O'Briens contend that damage to the vehicle which remained after these repairs resulted in a loss in their vehicle's value. They claim that Progressive should indemnify them for that loss.

*Connelly:* In June 1998, Steven D. Connelly damaged his 1997 KIA Sportage Sport Utility Vehicle ("S.U.V.") in a collision in Chester County, Pennsylvania. Connelly's vehicle sustained substantial damage to the front and hood. He filed a claim with his insurance provider, Keystone, under the collision provision of the policy. The Limit of Liability section of the Keystone policy closely parallels the language in subsections (a) and (b) of the comprehensive section of the Progressive policy, *supra*. Like Progressive, Keystone limited recovery to the lesser of the actual cash value or the cost to repair or replace. The Keystone policy did not contain the "like kind and quality" language that appeared in the Progressive policy. After assessing the damage to Connelly's S.U.V., Keystone opted to repair the vehicle. The damage required replacement of major panels, refinishing and repainting of the vehicle. Appellant Connelly admits that the vehicle was properly repaired, but maintains that he should be indemnified for the diminished value resulting from residual physical damage.

*Hocutt:* In August 1999, John E. Hocutt, Jr. was involved in a collision that resulted in damage to his 1996 Isuzu Rodeo S.U.V. The vehicle suffered extensive structural damage and Hocutt submitted a claim to his insurer, State Farm, under the collision coverage section of the State Farm policy. The language in the State Farm policy closely resembles that of both the Progressive and Keystone policies. As in Keystone, the Limit of Liability for loss to property is the lower of actual cash value of the vehicle or the cost of repair and replacement. There is no language concerning "like kind and quality." Ho-

cutt stated that the repairs were performed in a "workmanlike manner" at State Farm's expense. Nevertheless, he maintains that the vehicle was not restored to its pre-loss condition because, after the completion of the repairs, the vehicle was worth less than it was before the collision.

In granting the Defendants' Motions to Dismiss, the Superior Court made assumptions of fact consistent with Plaintiffs' allegations. The trial judge assumed that, even after all of the repairs had been made to plaintiffs' vehicles, physical damage, including evidence of repair, remained.[3] He concluded that this type of damage resulted in a loss of value known as "diminished value."[4] Moreover, the judge assumed that diminished value is both real and non-speculative and, that if given the opportunity, Plaintiffs could prove real damages.[5]

## II.

█ Under Delaware law, the interpretation of contractual language, including that of insurance policies, is a question of law.[6] This Court reviews questions of law *de novo*.[7]

The Delaware Code neither mandates nor regulates the carrying of comprehensive or collision coverage in the automobile insurance policies for vehicles registered in this State. Instead, insurers make comprehensive and collision coverage available for purchase as supplements to the insurance required by the State. Parties to an insurance contract are free to agree upon any terms so long as that agreement is not inconsistent with a statutory prohibition or public policy.[8] Because the State of Delaware has no policy interest in the coverage at issue in this case, the role of the Court is to determine from the contract documents the terms agreed upon by the parties.

The Court noted *supra* that minor differences exist in the language of the three policies at issue in this litigation. The most notable among these is the absence of the term "like kind and quality" from both the Allstate and State Farm policies. The Superior Court correctly determined that the presence or absence of these terms was not dispositive in this case.[9] While these differences may govern the standards of workmanship to which the claimants may hold their insurers, that question is not before us today. Therefore, the "like kind and quality" language does not affect whether the policies provide coverage for diminution of value and is irrelevant to our decision in these cases.

## III.

█ Appellants contend that the policies in question explicitly provide for coverage of diminished value, despite the lack of any clear statement to that effect in the policies. They argue that the plain and

3. *O'Brien*, 2000 WL 33113833 at *1.

4. *Id.*

5. *Id.* at *4.

6. *Emmons v. Hartford Underwriters Ins. Co.*, Del.Supr., 697 A.2d 742, 744–45 (1997); *Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, Del.Supr., 616 A.2d 1192, 1195 (1992).

7. *Rohner v. Niemann*, Del.Supr., 380 A.2d 549, 552 (1977).

8. *Grissom v. Nationwide Mut. Ins. Co.*, Del. Ch., 599 A.2d 1086, 1088 (1991); *see also Whalen v. On–Deck, Inc.*, Del.Supr., 514 A.2d 1072 (1986) (the Court will not void an insurance policy provision absent "clear indicia" of a contrary public policy "in light of the importance of the right of parties to contract as they wish").

9. *O'Brien*, 2000 WL 33113833 at *2.

ordinary meanings of the terms "loss," "repair," and "damage" favor coverage. Under their theory, these words taken together require that, in the context of an insurance contract, an insurer opting to repair a damaged vehicle must restore that vehicle to substantially the same condition that it was in before the damage occurred. We find this to be an accurate statement of the insurers' duties under the language of the policies. However, Appellants cite the Superior Court's interpretation of similar policy language in *Delledonne v. State Farm Mut. Auto. Ins. Co.* to support their further claim that "restoration to such condition can not be said to have been effected if the repairs fail to render the vehicle as valuable as before."[10] The language of the insurance contract reviewed in *Delledonne*[11] simply does not support the Superior Court's holding in that case.

■ We have stated that a court's interpretation of an insurance contact must rely on a reading of all of the pertinent provisions of the policy as a whole, and not on any single passage in isolation.[12] Appellants contend that the term "loss" is defined as a financial detriment suffered as a result of damage to property. Therefore, they reason that any "repair" must restore this "loss." Whether or not this Court accepts Appellants' definition of loss, the claimed loss cannot be interpreted without an accompanying examination of all of the policies' limits on liability, which were contracted to by all of the involved parties. With minor, and again irrelevant, differences in language, the policies in question give the insurer the option of *either* reimbursing the claimant for the entire value of the damaged automobile *or* of repairing or replacing its parts, depending on which will cost the insurer less. A reading of the policy language as Appellants suggest would render this "choice" meaningless because it would require the insurer *in every case* to reimburse the claimant for the full value of the auto in question.

■ Delaware courts have consistently held that an interpretation that gives effect to each term of an agreement is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive.[13] Contracts are to be interpreted in a way that does not render any provisions "illusory or meaningless."[14] Appellants' argument would render the policy's stated choice between the lowest of actual cash value of the property and the amount necessary to repair or replace damaged property both illusory and meaningless. In every instance, the amount of recovery would be the cash value of the car before the incident that caused damage. This Court may not accept Appellants' argument and still give meaningful effect to those policy terms that give the

10. Del.Super., 621 A.2d 350, 352 (1992).

11. The facts of the *Delledonne* case strongly suggest that the severity of the flood damage in that instance made it impossible for repairs to restore the car to substantially the same condition as before the damage. If this was the case, the Superior Court should have determined whether the standards of repair as provided by the contract were met or could be met, not that the term repair required a full restoration of value.

12. *Aetna Cas. and Sur. Co. v. Kenner,* Del. Supr., 570 A.2d 1172, 1174 (1990).

13. *Warner Communications Inc. v. Chris–Craft Indus., Inc.,* Del.Ch., 583 A.2d 962, 971 (1989), *aff'd* Del.Supr., 567 A.2d 419 (1989) (TABLE).

14. *Sonitrol Holding Co. v. Marceau Investissements,* Del.Supr., 607 A.2d 1177, 1183 (1992); *Seabreak Homeowners Ass'n v. Gresser,* Del. Ch., 517 A.2d 263, 269 (1986), *aff'd,* Del. Supr., 538 A.2d 1113 (1988) (TABLE).

insurers a coverage option based on the lesser of the available costs. Therefore, this Court cannot find that the plain and ordinary meaning of the policy terms requires the insurers to indemnify the policy holders for diminution of value.

## IV.

 In the alternative, Appellants argue that the policy language relating to the terms "loss" and "repair and replace"[15] in their respective policies is ambiguous. We have held that where an ambiguity does exist, the doctrine of *contra proferentem* requires that the language of an insurance policy be construed most strongly against the insurance company that drafted it.[16] It is "the obligation of the insurer to state clearly the terms of the policy."[17] Appellants contend that the contract language is ambiguous because it is susceptible to more than one interpretation. Therefore, they argue, the terms of the policies in question must be construed to provide coverage for diminished value when the insurer has chosen to repair a damaged vehicle.

 However, where the language of a policy is clear and unequivocal, the parties are to be bound by its plain meaning.[18] Clear and unambiguous language in an insurance contract should be given "its ordinary and usual meaning."[19] The Dela-

ware courts should not "destroy or twist policy language under the guise of construing it."[20] "[C]reating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented."[21] In construing insurance contracts, we have held that an ambiguity does not exist where the court can determine the meaning of a contract "without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends."[22] Indeed, we will not torture policy terms to create an ambiguity where an ordinary reading leaves no room for uncertainty.[23]

 This Court has further stated that an insurance contract is not ambiguous simply because the parties do not agree on the proper construction.[24] Instead, a contract is only ambiguous when the provisions in controversy are reasonably or fairly susceptible to different interpretations or may have two or more different meanings.[25] Appellants, citing the United States Court of Appeals for the Third Circuit in *Inter Medical Supplies, Ltd. v. EBI Medical Sys, Inc.*,[26] argue that in deciding whether a contract is ambiguous

> [a court does] not simply determine whether, from [the court's point] of view

15. Or, as in the O'Brien policy, "repair or replace . . . with like kind and quality."

16. *Rhone–Poulenc,* 616 A.2d at 1196; *Steigler v. Insurance Co. of N. Am.,* Del.Supr., 384 A.2d 398, 400 (1978).

17. *Emmons v. Hartford Underwriters Ins. Co.,* Del.Supr., 697 A.2d 742, 745 (1997).

18. *Id.*

19. *Rhone–Poulenc,* 616 A.2d at 1195.

20. *Id.*

21. *Id.* at 1196 (quoting *Hallowell v. State Farm Mut. Auto. Ins. Co.,* Del.Supr., 443 A.2d 925, 926 (1982)).

22. *Rhone–Poulenc,* 616 A.2d at 1196 (quoting *Holland v. Hannan,* D.C.App., 456 A.2d 807, 815 (1983)).

23. *Rhone–Poulenc,* 616 A.2d at 1197.

24. *Id.* at 1196.

25. *Id.*

26. 181 F.3d 446, 457 (1999).

the language is clear. . . . Before making a finding concerning the existence or absence of ambiguity, [the court] consider[s] the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation.

This view is not Delaware law. We have held unequivocally that "[e]xtrinsic evidence is not to be used to interpret contract language where that language is 'plain and clear on its face.' "[27] Therefore, the only question for this Court is whether or not the plain language of the contract suggests more than one interpretation.

 Appellants argue that the mere fact that a number of courts nationwide have reached different and contradictory conclusions about the meaning of policy terms nearly identical to those before us in this case creates an ambiguity. This contention, while seductive, is without merit. The *Delledonne* Court, cited by Appellant, incorrectly stated Delaware law by finding that the existence of two separate and distinct lines of authority in the interpretation of similar policy language is evidence of ambiguity.[28] The duty of the courts is to examine solely the language of the contractual provisions in question to determine whether the disputed terms are capable of two or more reasonable interpretations.[29] In so doing, Delaware courts are obligated to confine themselves to the language of the document and not to look to extrinsic evidence to find ambiguity.[30] A mere split in the case law concerning the meaning of a term does not render that meaning ambiguous in the Delaware courts.[31]

This Court would place itself in an untenable position if it were to recognize every split in judicial authority as *prima facie* evidence of ambiguity. In the context of interpreting insurance agreements, an adoption of this policy would unduly restrict the power of the Delaware courts to render decisions independent of our sister courts. As discussed *supra*, absent exceptional circumstances, ambiguous terms in insurance contracts are interpreted in favor of the insured under the principle of *contra proferentem.* If this Court were to allow an insured to demonstrate ambiguity by providing evidence of a split in authority, *contra proferentem* would preclude us from even addressing the contract language or the merits of the case.

 Appellants also contend that the internal documents of at least one insurer, Progressive, support the claimed ambiguity. Again, extrinsic evidence will not be used where the clear language of the policy does not support an ambiguous reading. Appellants' are quick to note that Progressive altered its policy explicitly to exclude coverage for diminished value after this litigation began. They suggest that this alteration is tantamount to an admission by Progressive that it either

27. *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, 693 A.2d 1059, 1061 (1997).

28. 621 A.2d at 352–53. Appellant Hocutt also cites our decision in *Jones v. State Farm Mut. Auto. Ins. Co.*, Del.Supr., 610 A.2d 1352, 1353 n. 2 (1992). While we noted in that instance that evidence of a split in several courts' interpretation of policy language *buttressed* our finding that the generic term "damages" was ambiguous to the extent that it was unclear whether punitive damages were covered, the decision was based on our plain reading of the policy language. We have never held, as is argued here, that a split in authority alone establishes an ambiguity.

29. *Rhone–Poulenc*, 616 A.2d at 1196.

30. *Hallowell*, 443 A.2d at 926.

31. *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, Del.Super., 711 A.2d 45, 59 (1995) aff'd, *E.I. du Pont de Nemours & Co. v. Allstate Ins. Co.*, Del.Supr., 693 A.2d 1059 (1997).

accepted Appellants' interpretation of the insurance contract to include diminished value or that they, at the very least, acknowledged the existence of an ambiguity that needed to be corrected. The fact that Progressive chose to make a clear policy provision more clear as a remedial measure to this litigation may not be used as evidence of an admission of either ambiguity or acceptance of Appellants' interpretation of the policy. The application of Appellants' argument would discourage remedial action and thus be contrary to the public policy of this State.[32]

We have made clear this State's preference for as much clarity as possible in contract language. The adoption of Appellants' argument would penalize those parties who choose to alter their contracts in an attempt to avoid exactly the type of costly litigation before us in this case. Moreover, it would discourage insurers from clarifying language in their policies, whether ambiguous or not, for fear of negative inferences being drawn about the altered terms. Our courts should encourage insurers to reexamine even their most unambiguous policies in an attempt to stem costly litigation and improve consumer understanding of their policies. Their actions clarifying insurance policy terms will reduce the likelihood that policyholders will be tempted to debate terms of an insurance contract in order to obtain indemnification for which they have neither bargained nor paid. Not only will this help the insurers lower litigation costs, but it should also benefit insureds in the form of lower premiums.

Because this Court will not consider extrinsic evidence in determining the ambiguity of an insurance provision, we must decide whether or not the language of the contract is ambiguous on its face. Appellants' contend that "repair or replace" provisions of the policy are ambiguous because the terms may create the impression that the insurer will cover not only the costs of physical repair, but also those costs associated with the restoration of value.

We conclude that the language "repair and replace" is not ambiguous and that this language does not contemplate payment for diminution of value. In the common usage, the word "repair" means to fix by replacing or putting together what is broken, or, as the court in *Carlton v. Trinity Universal Ins. Co.* stated, "to bring back to good or useable condition."[33] This definition of repair does not require the insurer to restore the vehicle to factory condition or even to the condition of the vehicle before the accident. Therefore, a claimant is precluded from recovering the amount of any reduction in the market value of the automobile due to factors that are not subject to either repair or replacement. Under the "repair or replace" limitations on the policy, the insurer's liability to a claimant is "capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed before the loss."[34] This obligation includes neither diminution in value resulting from a "market psychology" nor that resulting from the minute physical imperfections that are inherent to any repair, so long as repairs have been completed in a workmanlike manner and the vehicle has been returned to substantially the same form as before the accident.

Ascribing to the phrase "repair or replace" an obligation to compensate

---

**32.** *See Tzung v. State Farm Fire & Cas. Co.,* 9th Cir., 873 F.2d 1338, 1341 (1989).

**33.** Tex.App., 32 S.W.3d 454, 464 (2000).

**34.** *Id.* at 465.

the insured for things that cannot reasonably be repaired or replaced violates the most fundamental rule of contract construction.[35] Our courts must give effect to the intent of the parties as it is expressed in the language of the written policy.[36] Thus, the *Delledonne* Court erred in finding that the purpose of an auto insurance policy is to "compensate the insured in full for any loss or damage to his automobile less any deduction specified."[37] The actual purpose of an insurance policy is to compensate the insured to the extent of the *agreed upon policy terms.* In the case of the policies before this Court, those agreed upon terms give the insurer the option of paying the lesser of the cost of the vehicle before the accident or the cost of repairing the vehicle to substantially the same physical, operating, and mechanical condition as existed before the accident. Thus we find that the terms "repair or replace," in the context of these insurance contracts, are not reasonably or fairly susceptible to different interpretations or that they may have two or more different meanings, and are therefore unambiguous.

In conclusion, the terms of an insurance contract are to be read as a whole and given their plain and ordinary meaning. A plain reading of the limits on liability in the policies in question unambiguously give the insurers the option to choose between the cost of repair or the full value of the vehicle before the covered damage occurred. To give full effect to this option, this Court can only assign one meaning to the terms "repair or replace." Under this provision the insurer is obligated to repair or replace vehicle parts only to the extent necessary to return the automobile to substantially the same physical, operating, and mechanical condition as before the covered incident. Therefore we AFFIRM the rulings of the Superior Court.

---

**35.** *Id.*

**36.** *See Hercules, Inc. v. AIU Ins. Co.,* Del. Supr., 784 A.2d 481, 2001 WL 965080 at *4 (2001) (The goal of the Court is to "ascertain the intent of the contracting parties based on the contract terms."); *see also Carlton,* 32 S.W.3d at 464–65.

**37.** 621 A.2d at 353.