# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1878
_____

Gateway Customer Solutions, LLC

*Plaintiff - Appellant*

v.

GC Services Limited Partnership

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: December 16, 2015
Filed: June 10, 2016
_____

Before WOLLMAN, LOKEN, and BYE, Circuit Judges.[1]
_____

LOKEN, Circuit Judge.

In April 2011, Gateway Customer Solutions, LLC ("Gateway"), entered into a Business Referral Agreement with GC Services Limited Partnership ("GC Services") in which Gateway agreed to solicit and refer potential clients to GC

_____

[1]This opinion is being filed by Judge Wollman and Judge Loken pursuant to 8th Cir. Rule 47E.

Services. Gateway soon introduced GC Services to Mercedes-Benz Financial Services ("MBFS"). In August 2011, MBFS awarded GC Services a three-year contract to provide call center services to MBFS (the "2011 Agreement"). The Gateway - GC Services agreement provided for commission payments to Gateway for "[t]he duration of an awarded contract and any renewals pursuant thereto."

In 2014, GC Services and MBFS entered into a new agreement reciting that it "supersedes and replaces" their 2011 Agreement. Gateway commenced this diversity action, alleging that it is entitled to continuing commissions because the new agreement (the "2014 Agreement") was a "renewal" of the 2011 Agreement. Acting on the parties' cross motions for summary judgment, the district court[2] granted summary judgment to GC Services, holding that the 2014 Agreement between GC Services and MBFS was a new agreement that ended GC Services's obligation to pay commissions to Gateway. Reviewing the grant of summary judgment and the district court's interpretation of state law *de novo*, we affirm. See Matrix Grp. v. Rawlings Sporting Goods Co., 477 F.3d 583, 589 (8th Cir. 2007) (standard of review).

The Business Referral Agreement provided that Gateway would submit a proposed contract Addendum if it found GC Services a potential client. If GC Services executed the Addendum and then entered into a contract with the potential client, Gateway would receive commissions from GC Services "for the period of time [and] the services . . . explicitly specified on an executed Addendum." Gateway would continue to receive commissions in accordance with the Addendum even after the parties terminated the Business Referral Agreement.

---

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

In May 2011, Gateway and GC Services executed Addendum A, listing MBFS as a potential GC Services client. Consistent with the form of Addendum attached to the Business Referral Agreement, Addendum A provided that GC Services would pay Gateway a brokerage fee totaling 5% of all fees GC Services received from MBFS for "[t]he duration of an awarded contract and any renewals pursuant thereto." The 2011 Agreement between GC Services and MBFS provided:

> This Agreement is for a period of three (3) years ("Initial Term") and shall continue upon the same terms and conditions as set forth herein for additional successive one-year periods ("Renewal Terms") until termination of same is requested by written notice from either party to the other at least ninety (90) days in advance of the termination of any Initial or Renewal Time period, as applicable.

GC Services and MBFS executed the 2014 Agreement effective August 1, 2014. The 2014 Agreement provided that it (i) "supersedes and replaces the [2011 Agreement]," and (ii) "is for a period of three (3) years ('Initial Term') beginning on the Effective Date, and may be extended as mutually agreed by the parties." Otherwise, the 2011 and 2014 Agreements contained substantially similar terms; the 2014 Agreement even retained a misspelling in the 2011 Agreement.

In September 2014, GC Services notified Gateway that the 2011 Agreement had expired; therefore, GC Services would no longer pay commissions. Gateway responded that it was under the impression the 2011 Agreement had been renewed. GC Services replied, "we have negotiated a new agreement at the expiration of the original agreement and our services will no longer be performed pursuant to that contract . . . or any renewal options." This declaratory judgment action followed. The district court granted summary judgment for GC Services, concluding that Addendum A unambiguously provided that the 2014 Agreement was not a "renewal" of the 2011 Agreement.

The parties agree that, pursuant to a choice-of-law provision in the Business Referral Agreement, Delaware law governs our interpretation of their contract. Delaware follows "traditional principles of contract interpretation," including giving "effect to the plain meaning of a contract's terms and provisions when the contract is clear and unambiguous." ConAgra Foods, Inc. v. Lexington Ins. Co., 21 A.3d 62, 68-69 (Del. 2011). A contract term is not ambiguous "simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are . . . fairly susceptible of different interpretations or may have two or more different meanings." Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992). The contract must be construed as a whole, not by looking at terms in isolation. O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 287 (Del. 2001). "The true test is what a reasonable person in the position of the parties would have thought [the contract language] meant." Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 n.8 (Del. 1997).

This case hinges on the meaning of the reference to "renewals" in Addendum A. Gateway contends that, even if the 2014 Agreement was a new contract between GC Services and MBFS, in substance it merely replaced the 2011 Agreement and therefore falls within the meaning of contract "renewal" as defined in Black's Law Dictionary 1410 (9th ed. 2009): "The re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." The Supreme Court of Delaware has looked to Black's Law Dictionary in construing contract terms. See, e.g., Pac. Ins. Co. v. Liberty Mut. Ins. Co., 956 A.2d 1246, 1255 & n.35 (Del. 2008). However, "Delaware courts look to dictionaries for assistance in determining the plain meaning of terms *that are not contractually defined*." Seaford Golf & Country Club v. E.I. Dupont de Nemours & Co., 925 A.2d 1255., 1261 (Del. 2007) (emphasis added), citing Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 738 (Del. 2006).

Here, the term "renewals" *was* defined in Addendum A. The Terms of Fee Payment provision stated that commissions will be paid to Gateway for "[t]he duration of an awarded contract and any renewals *pursuant thereto*." (Emphasis added.) Thus, Addendum A -- drafted by Gateway -- provided that the period in which Gateway would be entitled to receive commissions would be defined in the future "awarded contract," a contract to which Gateway would not be a party. Perhaps not a wise provision, from Gateway's perspective, but it is not ambiguous. GC Services points out that if Gateway intended to be the beneficiary of *any* continuing business relationship between GC Services and Mercedes-Benz, Gateway had the option to draft Addendum A with plain language reflecting that intent.

In the 2011 Agreement (the "awarded contract"), GC Services and MBFS defined "Renewal Terms" as meaning "additional successive one-year periods . . . until termination . . . is requested by written notice from either party . . . at least ninety (90) days in advance of the termination." Although the 2014 Agreement between GC Services and MBFS had many terms substantially similar to the 2011 Agreement, the new agreement was not a "Renewal Term" of the 2011 Agreement. It was separately negotiated by the parties, was not for a one-year period, and explicitly stated that it "supersedes and replaces" the 2011 Agreement.

Gateway contends that the 2014 Agreement was a renewal due to its substantial similarity to the 2011 Agreement, citing cases from other jurisdictions in which the word "renewal" was more broadly defined or left undefined in the contract at issue. But when a contract specifically defines a word that has various possible meanings, the Supreme Court of Delaware looks to the plain meaning of that definition. Moreover, "[a] mere split in the case law concerning the meaning of a term does not render that meaning ambiguous in the Delaware courts." O'Brien, 785 A.2d at 289.

Because we agree with the district court that the relevant contract provisions are not ambiguous, we may not consider extrinsic evidence, nor does the doctrine of

*contra proferentum* apply (construing a contract in favor of the non-drafter).  <u>See</u> <u>Rhone-Poulenc</u>, 616 A.2d at 1196, 1198.

The judgment of the district court is affirmed.

_____