# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ARCH INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, CONTINENTAL CASUALTY INSURANCE COMPANY, NAVIGATORS INSURANCE COMPANY, RSUI INDEMNITY COMPANY, and BERKLEY INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. N16C-01-104 EMD CCLD |
| DAVID H. MURDOCK, C. MICHAEL CARTER, DOLE FOOD COMPANY, INC., and DFC HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

Submitted: September 21, 2016
Decided: December 21, 2016

*Upon Defendants' Motion to Dismiss*
***GRANTED in Part and DENIED in Part***

Robert J. Katzenstein, Esquire, and Kathleen M. Miller, Esquire, Smith, Katzenstein & Jenkins LLP, Wilmington, Delaware. *Attorneys for Arch Insurance Company, Liberty Mutual Insurance Company, Continental Casualty Insurance Company, Navigators Insurance Company, RSUI Indemnity Company, and Berkley Insurance Company.*

Michael R. Goodstein, Esquire, Bailey Cavalieri LLC, Columbus, Ohio. *Attorney for Arch Insurance Company and Liberty Mutual Insurance Company.*

John R. Gerstein, Esquire, and Merril Hirsh, Esquire, Troutman Sanders, LLP, Washington, District of Columbia, and Stacey E. Rufe, Esquire, Troutman Sanders, LLP, Richmond, Virginia. *Attorneys for Continental Casualty Insurance Company.*

Michael L. Manire, Esquire, and Deeanna M. Galla, Manire & Galla LLP, New York, New York. *Attorneys for Navigators Insurance Company.*

Robert P. Conlon, Esquire, and Kevin A. Lahm, Esquire, Walker Wilcox Matousek LLP, Chicago, Illinois. *Attorneys for RSUI Insurance Company.*

Ommid C. Farashahi, Esquire, Michael T. Skoglund, Esquire, and Nicholas R. Novak, Esquire, BatesCarey LLP, Chicago, Illinois. *Attorneys for Berkley Insurance Company.*

Elena C. Norman, Esquire, Mary F. Dugan, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, Kirk A. Pasich, Esquire, Pamela Wood, Esquire, Liner LLP, Los Angeles, California, Mikaela Whitman, Esquire, Liner LLP, New York, New York. *Attorneys for David H. Murdock, C. Michael Carter, Dole Food Company, Inc., and DFC Holdings, LLC.*

**DAVIS, J.**

## I. INTRODUCTION

This breach of contract case is assigned to the Complex Commercial Litigation Division of this Court. Plaintiffs Arch Insurance Company, Liberty Mutual Insurance Company, Continental Casualty Insurance Company, Navigators Insurance Company, RSUI Indemnity Company, and Berkley Insurance Company (collectively, "Insurers") are six excess insurance carriers. The Insurers filed a declaratory judgment against Defendants David H. Murdock, C. Michael Carter (collectively with Mr. Murdock, the "Individual Defendants"), Dole Food Company, Inc. ("Dole"), and DFC Holdings, LLC ("DFC").[1] The Insurers seek a declaration that they do not have to fund an underlying settlement due to Defendants' alleged fraud. Alternatively, the Insurers move to be allowed to subrogate against their insured pursuant to an exclusion provision contained in the relevant policies.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

The Insurers belong to Dole's overall package of Directors and Officers Liability insurance coverage.[3] All are in excess of, and follow form to, Axis Insurance Company's Primary Policy and two, non-party, excess carriers: National Union Fire Insurance Company

---

[1] The Individual Defendants, Dole and DFC will be referred to collectively as the "Defendants."

[2] Unless otherwise indicated, the facts provided in this Opinion are the facts alleged in the Amended Complaint filed by the Insurers. For purposes of Dole's Motion (as defined below), the Court must view the Amended Complaint's alleged facts in a light most favorable to the Insurers. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).

[3] Plaintiffs' Amended Complaint for Declaratory Relief ("Pls.' Compl.") ¶ 21.

2

and Federal Insurance Company.[4]  The insurers and their contractual range of coverage are as follows:

| Insurer | Limit of Liability |
|---|---|
| AXIS | $15 million primary excess of ("e/o") $500,000 retention |
| National Union | $10 million e/o $15 million e/o $500,000 retention |
| Federal | $10 million e/o $25 million e/o $500,000 retention |
| Arch | $10 million e/o $35 million e/o $500,000 retention |
| Liberty Mutual | $10 million e/o $45 million e/o $500,000 retention |
| Continental | $10 million e/o $55 million e/o $500,000 retention |
| Navigators | $10 million e/o $65 million e/o $500,000 retention |
| RSUI | $10 million e/o $75 million e/o $500,000 retention |
| Berkley | $15 million e/o $85 million e/o $500,000 retention |

Mr. Murdock owned 40% of Dole's stock and was its CEO.[5]  Mr. Carter was Dole's president and CEO.[6]  In 2013, Mr. Murdock utilized DFC, a holding company, to acquire the remaining Dole stock and take it private.[7]  Mr. Murdock completed the acquisition in November 2013.  Mr. Murdock paid shareholders $13.50/share.[8]  Thereafter, shareholders filed multiple lawsuits challenging the transaction's fairness.[9]

In *In re Dole Food Company, Inc. Stockholder Litigation* (the "Memorandum Opinion"),[10] stockholders alleged Defendants engaged in a lengthy process that manipulated the

---

[4] *Id.*
[5] *Id.* ¶ 14.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 17.
[8] *Id.* ¶ 18.
[9] *Id.*
[10] C.A. No. 8703-VCL, 2015 WL 5052214, 2015 WL 5052214 (Del. Ch. Aug. 27, 2015) (a copy of which is attached to the Amended Complaint as Exhibit 1).

3

stock price so that Mr. Murdock could acquire the stock at a lower price.[11] Vice Chancellor Laster, in his Memorandum Opinion, repeatedly cited to "fraud" and "fraudulent activity."[12] Vice Chancellor Laster found breaches of the duty of loyalty, and assessed liability against Mr. Murdock, Mr. Carter, and DFC in the amount of $148,190,590.18.[13]

On September 21, 2015, Dole's "insurance recovery counsel" wrote to the Insurers.[14] The letter notified the Insurers that Dole was considering settlement and mediation. It asked that the Insurers consider funding a settlement. The Insurers all responded, citing various potential exclusions and requesting more information from Dole.[15] On October 29, 2015, Dole responded.[16] Dole disagreed with Federal's reservations, and again demanded coverage for the underlying settlement.[17]

On November 5, 2015, Dole signed a term sheet settling the underlying action.[18] On December 7, 2015, the underlying parties signed a formal Stipulation and Agreement of Settlement (the "Settlement")[19] In lieu of an appeal, the parties settled for 100% plus interest.[20] Murdock agreed to pay the settlement on the Defendants' behalf.[21] Vice Chancellor Laster approved the settlement on February 10, 2016 (the "Order and Final Judgment").[22] The

---

[11] *See* Pls.' Compl. ¶ 20. *See also In re Dole Food Co., Inc.*, 2015 WL 5052214, at *3-25.
[12] *Dole*, 2015 WL 5052214 at *2 ("[W]hat the stockholder vote could not cleanse, and what even an arguably fair price does not immunize, is fraud."); *see also id.* at *26 ("Carter engaged in fraud."); *id.* ("Carter's fraud tainted the approval of the Merger[.]").
[13] *Id.* at *47.
[14] Pls.' Compl. Ex. 11.
[15] *See id.* Ex. 12 (Letter from Federal Insurance Company); Ex. 13 (Letter from Arch Insurance Company); Ex. 14 (Letter from Liberty International Underwriters); Ex. 15 (Letter from Continental Insurance Company); Ex. 16 (Letter from Navigators Insurance Company); Ex. 17 (Letter from RSUI Indemnity Company); Ex. 18 (Letter from Berkley Insurance Company).
[16] *Id.* Ex. 19.
[17] *See id.*
[18] *Id.* Ex. 20.
[19] *Id.* ¶ 57.
[20] Transmittal Aff. of Mary F. Dugan, Esq. in Support of Reply Brief in Support of Rule 12(b)(6) Motion to Dismiss of David H. Murdock, C. Michael Carter and Dole Food Company, Inc., Ex. 3 (filed June 16, 2016).
[21] *Id.* Ex. 1 at 15.
[22] *Id.* Ex. 3 at 13

4

Settlement caused the Chancery Court action to be dismissed "with prejudice and in its entirety."[23] On February 26, 2016, Dole's counsel wrote to the Insurers, seeking indemnification for the Settlement.[24] The Court is not aware that any party took an appeal of the Order and Final Judgment.

On January 13, 2016, prior to the Chancery Court's approving the Settlement, the Insurers filed this Declaratory Judgment action. The parties stipulated to dismiss the Insurers' claims against DFC, because DFC, is not an insured under any of the policies.[25] On April 8, 2016, the Insurers filed their Amended Complaint for Declaratory Relief (the "Amended Complaint") to allege facts regarding the stockholders' settlement.[26]

On April 28, 2016, Defendants filed their Opening Brief in Support of Rule 12(b)(6) Motion to Dismiss of David H. Murdock, C. Michael Carter, and Dole Food Company, Inc. ("Dole's Motion"). On June 1, 2016, the Insurers filed their Answering Brief of Plaintiff Insurers in Opposition to the Rule 12(b)(6) Motion to Dismiss of Defendants David H. Murdock, C. Michael Carter, and Dole Food Company, Inc. (the "Insurers' Opposition"). On June 16, 2016, Defendants filed their Reply Brief in Support of Rule 12(b)(6) Motion to Dismiss of David H. Murdock, C. Michael Carter, and Dole Food Company, Inc. ("Dole's Reply").

At oral argument, the Court requested supplemental briefing on Exclusion IV.A.6, an insurance provision that affects the Insurers' claims. On September 14, 2016, Defendants filed their The Insureds' Supplemental Brief Regarding Exclusion IV.6 ("Dole's Supplement"), and the Insurers filed their Post-Hearing Brief of Plaintiff Insurers on the Issue of Subsection 6 of the Primary Policy ("Insurer's Supplement"). On September 21, 2016, Defendants filed the

---

[23] *Id.* at 6.
[24] Pls.' Compl. ¶ 59.
[25] *See* D.I. Nos. 17 and 22.
[26] D. I. No. 29.

5

Insureds' Response to the Insurers' Post-Hearing Brief Regarding Exclusion IV.6 ("Dole's Supplemental Opposition"), and the Insurers filed their Plaintiff Insurers' Post-Hearing Answering Brief on the Issue of Subsection 6 of the Primary Policy ("Insurers' Supplemental Opposition").

## III. PARTIES' CONTENTIONS

Defendants contend there is no controversy between (i) the Insurers and Mr. Carter and Dole regarding Count I, or (ii) the Insurers and Mr. Murdock and Mr. Carter regarding Count II.[27] First, Defendants contend Vice Chancellor Laster approved the Settlement, which obligates only Mr. Murdock to fund the settlement. As such, Mr. Carter and Dole are not seeking coverage from the Insurers. Additionally, as the case is settled, Defendants claim there are no defense costs to seek from the Insurers because the other lower-tiered insurers advanced all defense costs.

Defendants also contend that the Insurers may not subrogate against an individual insured as a matter of law. Defendants argue that the Insurers refused to fund any amount of the settlement under the policy's profit/financial gain exclusion. If the Insurers' argument prevails, therefore, there is nothing to pay. If the Insurers' argument fails, and the exclusion does not apply, then the policy clearly and expressly precludes subrogation. Defendants rely on Primary Policy Section VIII.H, which provides that the Insurers will not exercise their right of subrogation "against an Insured Individual unless Exclusion IV.6 applies to such Insured Individual.[28]

---

[27] If the Court grants the motion in full, Murdock would remain a Count I Defendant. Dole would remain a Count II Defendant.

[28] Pls.' Compl. Ex. 2 (Primary Policy Endorsement No. 3 at p. 11) (emphasis omitted).

6

In the Endorsement No. 3 to the Primary Policy, Exclusion IV.A.6 was replaced – Section V.6. [29] As replaced, Exclusion IV.A.6 reads as follows:

The Insurer shall not be liable for Loss on account of any Claim: . . . based upon, arising out of or attributable to:

a. Any profit, remuneration or financial advantage to which the Insured was not legally entitled; or

b. Any willful violation of any statute or regulation or any deliberately criminal or fraudulent act, error or omission by the Insured;

if established by a final and non-appealable adjudication adverse to such Insured in the underlying action. [30]

The Insurers contend that they do not have to fund the Settlement as a matter of law. The Insurers argue that Defendants' alleged fraud in taking Dole private, as discussed at length in the Memorandum Opinion, excuses the Insurers' duty to defend and indemnify. Further, the Insurers claim that Defendants settled the underlying lawsuit with minimal to no input from the Insurers. The Insurers describe the Settlement as a *fait accompli.* The Insurers contend they have a right to consent to the Settlement. The relevant policies provide:

The Insureds shall not admit any liability, settle, offer to settle, stipulate to any judgment or otherwise assume any contractual obligation with regard to any Claim or Insured Inquiry without the Insurer's prior written consent, which shall not be unreasonably withheld. [31]

The Insurers allege that Defendants failed to get consent prior to settling.

The Insurers also argue that they have a right of subrogation against Defendants as a matter of California law and pursuant to the profits/financial gain exclusion in the parties' policies. The Insurers contend that California law governs the parties' policies under a Restatement (Second) Conflicts of Laws § 188 analysis.

---

[29] *See Id.* (Primary Policy Endorsement No. 3 at p. 7).
[30] *See Id.* (emphasis omitted).
[31] *See Id.* (Primary Policy Endorsement No. 3 at p. 8-9) (emphasis omitted).

## IV. STANDARD OF REVIEW

Superior Court Civil Rule 12 ("Civil Rule 12") governs motions to dismiss.[32] Upon a motion to dismiss under Civil Rule 12(b)(6), the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) will only dismiss a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[33] However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[34] In considering a motion to dismiss under Civil Rule 12(b)(6), the Court generally may not consider matters outside the complaint.[35] However, documents that are integral to or incorporated by reference in the complaint may be considered.[36]

## V. DISCUSSION

### A. COUNT I STATES A CLAIM UPON WHICH RELIEF COULD BE GRANTED

The Court finds that, at this stage in the proceedings, there is an actual controversy between the Insurers and the Defendants. For an "actual controversy" to exist, the following four conditions must be met: (1) there must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) there must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination.[37]

---

[32] Super. Ct. Civ. R. 12.

[33] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at *3 (Del. Super. October 27, 2010).

[34] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).

[35] *See* Super. Ct. Civ. R. 12(b).

[36] *See In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995).

[37] *XI Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014).

The Insurers have met all four necessary conditions to state a claim for declaratory relief. There is a controversy involving the rights of the party seeking declaratory relief. Based on the allegations made in the Amended Complaint, the Insurers may be obligated to indemnify a portion of the $150 million Settlement. Defendants provided the Insurers with the Memorandum Opinion and told the Insurers they were considering settlement. According to the Amended Complaint, a letter was written by Dole's representative asserting a potential indemnification for Dole, Mr. Murdock and Mr. Carter.[38] Allegedly, with no input or consent, the Defendants settled. Now, the Insurers may have to indemnify, in part or otherwise, certain of the Defendants in connection with the Settlement.

Defendants have an interest in contesting the claim, regardless of who funded the Settlement. The Insurers contend that they will not have to fund the Settlement or, in the alternative, can subrogate against the other insureds for their purported malfeasance. The Insurers allege Defendants disregarded several policy provisions. For example, the Insurers did not consent to the Settlement; Defendants simply handed the settlement terms to the Insurers as a *fait accompli*.[39]

The parties' interests are real and adverse. As alleged in the Amended Complaint, Defendants are seeking coverage. The Insurers contend they do not have a duty to indemnify Defendants or otherwise fund a settlement obtained by Defendants' alleged fraud. Moreover, this controversy is ripe for judicial determination. Mr. Murdock has paid the Settlement. Defendants' argument that the Insurers focus on the "Term Sheet" is misplaced. The Defendants note that the reality is that Mr. Murdock paid the entire amount owed under the Settlement, and that Dole and Mr. Carter have not sought indemnification under the relevant policies.

---

[38] Pls.' Compl. ¶ 45; *See also id.* Ex. 11.
[39] *Id.* ¶ 51; *See also id.* Ex. 20.

Defendants' contentions, at this stage of the proceedings, are misdirected. The Court must proceed on the allegations made in the Amended Complaint. The Amended Complaint pleads a scenario that demonstrates an actual controversy regarding indemnification. The Court understands from counsel for Mr. Carter and Dole that these parties are not going to assert a claim for indemnification with respect to the settlement. If true, the Court believes the Insurers, Dole, and Mr. Carter should be able to fashion some type of stipulation for the Court that would resolve Count I as it relates to Dole and Mr. Carter. At this point, however, the Court finds that a controversy exists between the parties on the issue of indemnification.

## B. COUNT II IS DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED

### 1. EXCLUSION IV.A.6

Insurance policies "are construed as a whole, to give effect to the parties' intentions."[40] In other words, the Court is to interpret the insurance policy through a reading of all of the relevant provisions of the contract as a whole, "and not on any single passage in isolation."[41] Moreover, an interpretation that gives effect to all the terms of an insurance policy is preferable to any interpretation that would result in a conclusion that some terms are uselessly repetitive.[42] The Court is also to interpret an insurance policy in a manner that does not render any provisions "illusory or meaningless."[43]

---

[40] *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104, 1108 (Del. 2007). *See also AIU Insurance Co. v. Superior Court,* 729 P.2d 1253, 1264 (Cal. 1990).

[41] *O'Brien v. Progressive Northern Ins.*, 785 A.2d 281, 287 (Del. 2001). *See also Safeco Ins. Co. of America v. Robert S.*, 28 P.3d 889, 894 (Cal. 2001) ("When reasonably practical, contracts are to be interpreted in a manner that makes them reasonable and capable of being carried in effect[.]").

[42] *O'Brien,* 785 A.2d at 287. *See also Safeco Ins. Co. of America,* 28 P.3d at 894.

[43] *O'Brien,* 785 A.2d at 287 (*quoting* from *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. Super. 1992)). *See also Safeco Ins. Co. of America,* 28 P.3d at 894.

Where the language of an insurance policy is "clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning."[44] Ambiguous insurance policy language is construed in the insured's favor – *i.e.*, under the doctrine of *contra proferentem*, the language of an insurance policy must be construed most strongly against the insurance company that drafted the policy.[45] This is because insurance contracts are contracts of adhesion.[46] An insurance policy is ambiguous when the provisions at issue "are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[47] An insurance policy is not ambiguous merely because the parties do not agree on the proper construction.[48]

Coverage language is interpreted broadly to protect the insured's objectively reasonable expectations.[49] Exclusionary clauses, on the other hand, are "accorded a strict and narrow construction."[50] Even so, courts will give effect to exclusionary language where it is found to be "specific," "clear," "plain," "conspicuous" and "not contrary to public policy."[51] The Court also recognizes that case law exists that permits judicial application of the reasonable expectation

---

[44] *Faraday Capital Ltd.*, 918 A.2d at 1108. *See also AIU Insurance Co.,* 729 P.2d at 1264–65.

[45] *O'Brien*, 785 A.2d at 288; *see also Weiner v. Selective Way Ins. Co.,* 793 A.2d 434, 440 (Del. Super. 2002); *AIU Insurance Co.,* 729 P.2d at 1264–65.

[46] *See State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974) (holding that an insurance contract is "an adhesion contract, not a truly consensual agreement."). *See also J.C. Penney Casualty Ins. Co. v. M.K.*, 804 P.2d 689, 694, n. 9 (Cal. 1991) ("The premise of the strict-construction rule is that an insurance policy is an adhesion contract drafted by the insurer[.]").

[47] *Weiner,* 793 A.2d at 440. *See also Waller v. Truck Ins. Exchange, Inc.,* 900 P.2d 619, 627 (Cal. 1995).

[48] *O'Brien*, 785 A.2d at 288. *See also Waller,* 900 P.2d at 627 ("Courts will not strain to create an ambiguity where none exists.").

[49] *AT&T Corp. v. Clarendon Am. Ins. Co.*, C.A. No. 04C-11-167(JRJ), 2006 WL 1382268, at *9 (Del. Super. April 25, 2006), *rev'd in part on other grounds*, *AT&T Corp. v. Faraday Capital Ltd.*, 918 A.2d 1104 (Del. 2007). *See also Safeco Ins. Co. of America,* 28 P.3d at 893.

[50] *AT&T Corp.,* 2006 WL 1382268, at *9. *See also E.M.M.I. Inc. v. Zurich American Ins. Co.,* 84 P.3d 385, 389 (Cal. 2004).

[51] *AT&T Corp.,* 2006 WL 1382268, at *9. *See also MacKinnon v. Truck Ins. Exchange,* 73 P.3d 1205, 1213 (Cal. 2003).

doctrine to fulfill an insured's expectations even where those expectations contravene the unambiguous, plain meaning of exclusionary clauses.[52]

Exclusion IV.A.6, in relevant part, reads as follows:

The Insurer shall not be liable for Loss on account of any Claim: . . . based upon, arising out of or attributable to:

b. Any willful violation of any statute or regulation or any deliberately criminal or fraudulent act, error or omission by the Insured;

if established by a final and non-appealable adjudication adverse to such Insured in the underlying action.[53]

The language is not complicated. If a deliberate act of fraud by an insured is determined through a final and non-appealable adjudication, the Insurer will not be responsible for any claim made by that insured relating to the adjudicated fraudulent act.

The parties disagree on whether Exclusion IV.A.6 applies to the facts here. If it applies, then the Insurers do not have to fund the settlement, and if it does not apply then subrogation is not available to the Insurers. The Court does not find that the language of Exclusion IV.A.6 in this situation to be ambiguous. The Memorandum Opinion, without more (*i.e.*, a Chancery Rule 54(b) entry of judgment or a Chancery Rule 58 order),[54] was not a final and non-appealable adjudication adverse to such insured in the underlying action. The only final and non-appealable adjudication in the Chancery Court action was the Order and Final Judgment. Accordingly, Exclusion IV.A.6 does not apply to the facts of this case.

The Court has reviewed the case law on this issue and agrees with the law, and the reasoning therein, cited by the Defendants. In *Atlantic Permanent Federal Savings & Loan*

---

[52] *AT&T Corp.,* 2006 WL 1382268, at *9, n. 123 (citing and reviewing cases that utilized the "reasonable expectation doctrine").
[53] Pls.' Compl. Ex. 2 (Primary Policy Endorsement No. 3 at p. 7) (emphasis omitted).
[54] Del. Ch. R. P. 54(b); Del. Ch. R. P. 58.

12

*Ass'n v. American Casualty Co. of Reading, Pa.*,[55] the insured settled lawsuits alleging that it had

engaged in fraudulent and deceptive sales tactics. None of the lawsuits reached trial. American

Casualty denied coverage for the settlements, alleging they fell within a policy exclusion that

barred coverage for any loss:

> brought about or contributed to by the dishonesty of the Directors or
> Officers. However, notwithstanding the foregoing, the Directors or
> Officers shall be protected under the terms of this policy . . . unless a
> judgment or other final adjudication thereof adverse to the Directors or
> Officers shall establish that acts of active and deliberate dishonesty
> committed by the Directors or Officers with actual dishonest purpose and
> intent were material to the cause of action so adjudicated.[56]

The insureds sued in District Court, and the District Court held that the policy language

was inapplicable. On appeal, the Fourth Circuit affirmed: the exclusion did not apply because

there had not been a final adjudication of deliberate conduct in the underlying action.[57]

In *PepsiCo, Inc. v. Continental Casualty Co.*,[58] the insured directors and officers settled

a class action for purported securities violations and sought coverage from the D&O insurer.

The insurer argued that the claim came within an exclusion that barred coverage for any

payments "brought about or contributed to by the dishonesty of the Directors or Officers."[59] The

policy provided, however, that it would cover the costs of defending the directors and officers

against alleged dishonesty "unless a judgment or other final adjudication thereof adverse to the

directors and officers shall establish that acts of active and deliberate dishonesty committed by

the Directors and Officers with actual dishonest purpose and intent were material to the cause of

action so adjudicated."[60]

---

[55] 839 F.2d 212 (4th Cir. 1988).
[56] *Id.* at 217 n.6.
[57] *Id.* at 217.
[58] 640 F. Supp. 656, 660 (S.D.N.Y. 1986)
[59] *Id.* at 659.
[60] *Id.*

The court found that this exclusion did not apply because there was no final adjudication that the directors and officers were dishonest. The class action claims were dismissed with prejudice, and the SEC investigation resulted in charges against PepsiCo, not the directors or officers.[61] The court found that the insurer could not put the directors and officers on trial in the coverage litigation.[62]

In *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*,[63] the policies excluded coverage for claims brought about by the insureds' dishonest acts if "a judgment or other final adjudication thereof adverse to the insureds shall establish that acts of active and deliberate dishonesty committed by the insureds with actual dishonest purpose and intent were material to the cause of action so adjudicated."[64] At the time of the coverage litigation, the insureds contended, and the insurers admitted, that the lawsuits at issue had either settled without any adjudication or admission of wrongdoing by the insureds or were still pending.[65] As such, the exclusion did not apply. The court stated that the insureds' reading was "supported [] by the literal Policy language [and] by cases interpreting very similar policy language."[66]

This Court followed *PepsiCo* in *AT&T v. Clarendon America Insurance Co*.[67] In *AT&T*, the insureds had been sued in shareholder class action lawsuits alleging that they had made false and misleading statements. *While the case was in trial*, AT&T settled.[68] Trial immediately stopped, and the jury was dismissed *before it reached a verdict*.[69] The court approved the

---

[61] *Id.* at 660.
[62] *Id.*
[63] 666 F. Supp. 1180 (N.D. Ill. 1987).
[64] *Id.* at 1197.
[65] *Id.*
[66] *Id.* at 1197–98.
[67] 2008 WL 2583007 (Del. Super. Jun. 25, 2008) .
[68] *Id.* at *2 (emphasis added).
[69] *Id.* (emphasis added).

settlement and entered a final judgment, dismissing the case with prejudice.[70] The court did not

hold, nor did a jury find, that AT&T engaged in any deliberate dishonest, fraudulent or criminal

act or omission.[71]

The insurer denied coverage for the settlement, citing a fraud exclusion.[72] The policy's

fraud exclusion states that the insurer did not have to pay any claim:

> brought about or contributed to in fact by any *deliberate* dishonest,
> fraudulent or criminal act or omission, or any personal profit or advantage
> gained by any of the Directors and Officers to which they were not legally
> entitled *and providing any such finding is material to the cause of action
> so adjudicated*.[73]

The court disagreed, holding that the exclusion did not bar coverage for dishonest or fraudulent

acts "*unless* (1) there is a 'finding' that such acts occurred, and (2) that such a finding is

'material' to the cause of action being adjudicated."[74] The court found that the settlement was

not an adjudication.[75]

The Defendants' cited cases all involve instances of settlements occurring before or

during trial, before a matter is finalized for appeal. However, the rationale in these decisions

applies here. The Memorandum Opinion, outlining the Defendants' misconduct – was a step

towards a final adjudication. That decision alone was not final and was not appealable. What is

necessary is a judgment (by way of an "order") on all or some of the claims raised by the

litigants that could have been appealable.[76] The reality is that before any judgment was entered

---

[70] *Id.* at *3.
[71] *Id.*
[72] *Id.*
[73] *Id.* at *2.
[74] *Id.* at *6 (emphasis in original).
[75] *Id.* at *7 ("[T]he settlement of the Common Stock Litigation did not 'adjudicate' anything. A settlement is a settlement.").
[76] Del. Ch. R. P. 58 ("The order of the Court shall constitute the judgment of the Court"); Del. Ch. R. P. 54; *see also Tang Capital Partners, LP v. Norton*, C.A. No. 7476-VCG, 2012 WL 3776669, at *1, (Del. Ch. Aug. 31, 2012) (opinion without Rule 54(b) determination did not constitute a judgment upon which an appeal could proceed).

by Vice Chancellor Laster, the Defendants settled the case and had it dismissed through the Order and Final Judgment.

This Court acknowledges that the Settlement and the ensuing Order and Final Judgment entered by the Chancery Court are carefully crafted to mitigate the findings in the Memorandum Opinion. The Defendants could have done that to maintain insurance coverage or for a number of other reasons. While this Court does believe that Vice Chancellor Laster did make findings that some of the Defendants (DFC, Mr. Murdock, and Mr. Carter) committed fraudulent acts, the Memorandum Opinion was not a final and non-appealable adjudication. The express language contained in the Memorandum Opinion supports this conclusion. The Memorandum Opinion provides:

> [Mr.] Murdock, his entity DFC [ ], and Mr. Carter are liable for breaches of their duty of loyalty in the amount of $148,190,590.18. DeLorenzo and Deutsche Bank are not liable to the plaintiffs. The parties will confer and advise the court as to any issues that remain to be addressed.[77]

This language clearly shows that issues remained outstanding in the litigation and that the Memorandum Opinion was, at best, interlocutory.

If the Memorandum Opinion were final, there would need to be a docket entry showing the entry of an order in connection with that opinion. There is none. Moreover, if it were final, the Order and Final Judgment would have had to vacate the Memorandum Opinion and it does not.

As such, the Court finds that the plain, unambiguous language of Exclusion IV.A.6 means that this exclusion does not apply because (i) the Memorandum Opinion does not constitute a final and non-appealable adjudication and (ii) the Settlement and Order and Final Judgment do not make findings regarding fraudulent acts by an insured.

---

[77] *In re Dole Food Co., Inc.*, 2015 WL 5052214, at *47.

16

## 2. SUBROGATION

For any choice of law analysis, the Court must "compare the laws of the competing jurisdictions to determine whether the laws actually conflict."[78] If no conflict of law between the competing jurisdictions exists, there is a "false conflict" and the Court must avoid a choice of law analysis entirely.[79]

In California, "an insurer cannot bring a subrogation action against its own insured."[80] In Delaware, no right of subrogation exists for the insurer against the insured, co-insured, or the wrongdoer if they are an insured under the policy.[81] No choice of law analysis is needed because the result is the same.

The Insurers cannot subrogate against their insureds, *i.e.*, the Defendants, under Delaware or California law. Section VIII.H provides that the Insurers will not exercise their right of subrogation against an "Insured Individual" unless Exclusion IV.A.6 applies. According to the Policy, the Insurers are not required to indemnify under Exclusion IV.A.6 if it applies. As discussed above, Exclusion IV.A.6 does not apply here.

---

[78] *Mills Ltd. Partnership v. Liberty Mut. Ins. Co.,* 2010 WL 8250837, at *4 (quoting *Penn. Employee, Benefit Trust Fund v. Zeneca, Inc.*, 710 F.Supp.2d 458, 466 (D. Del. 2010) (forecasting that Delaware courts would require the existence of an actual conflict before embarking on a conflict of laws analysis)).
[79] *Deuley v. DynCorp Int'l., Inc.*, 8 A.3d 1156, 1161 (Del. 2010).
[80] *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.,* 143 Cal. App. 4th 1098, 1106 (2006).
[81] *Lexington Ins. Co. v. Raboin*, 712 A.2d 1011, 1015 (Del. Super. 1998), *aff'd*, 723 A.2d 397 (Del. 1998).

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  There is a valid controversy between the Insurers and the Defendants regarding the settlement.  The Insurers, however, are barred as a matter of law from subrogating against their Insureds.

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge